FILED

JUL 0 2 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )
RECORDS, LOCATION INFORMATION, )
INCLUDING PRECISION LOCATION )
INFORMATION, CELL SITE )
INFORMATION, AND OTHER )
SIGNALING INFORMATION )
ASSOCIATED WITH THE CELLULAR )
TELEPHONE HAVING THE NUMBERS )
(314) 359-8646. )

No. 4:18 MJ 5177 NAB

**FILED UNDER SEAL**

## AFFIDAVIT

Daniel Hill, being duly sworn, deposes and says that he is a Task Force Officer with the

Drug Enforcement Administration, duly appointed according to law and acting as such.

## Introduction

I am a deputized Task Force Officer with the DEA and have been since 2015. In addition

to being deputized as a Task Force Officer, I have been employed since January 2009 with the St.

Louis County Police Department, to include three years working narcotics/violent crimes in the

St. Louis County Police Department Neighborhood Enforcement Team. During my law

enforcement experience, I have conducted and been part of complex narcotics investigations

targeting drug trafficking organizations dealing in marijuana, methamphetamines, heroin, cocaine,

and other synthetic controlled substances. Through the course of the investigations, I have

conducted surveillance, participated in undercover operations, utilized confidential

informants/sources, executed search warrants, utilized precision locator warrants and executed

arrest warrants. As a result of my experience and training, I am familiar with the manner in which

illegal drugs and bulk U.S. currency are distributed and transported. Furthermore, I have investigated drug trafficking organizations responsible for violations of Title 18, United States Code, Sections 1956 and 1957.   I have also been the affiant on numerous Federal and State Search Warrant Affidavits and participated in numerous investigations that employed the use of precision location warrants (PLWs), Pen Registers, and Title III wiretaps.

The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses.    As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the location of a cellular telephone as part of a criminal investigation, it does not set forth all of the my knowledge regarding this matter.

Upon information and belief, and as explained in greater detail below, the cellular telephone bearing number **(314) 359-8646** (hereinafter the "**subject cellular telephone**"), which is being serviced by SPRINT (hereinafter referred to as "the Service Provider"), has been used, and is presently being used, in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 841(a)(1) and 846 (hereinafter referred to as "the subject offenses"), by an **Unknown Male** using the subject cellular telephone (hereinafter "**target subject**"), and others known and unknown.

The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling

2

information, including pen register information, in an effort to locate and monitor the location of the **subject cellular telephone**.

Your affiant further states that there is probable cause to believe that the location information associated with the **subject cellular telephone** will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

### Investigation and Probable Cause

This application pertains to an Unknown Male (UM) use of telephone number **(314) 359-8646,** the **subject cellular telephone**.  The application does not contain every fact known to investigators because it is offered for the limited purpose of supporting this particular application.

I am currently participating in an investigation with members of the SLMPD Special Operations Division, FBI, and the Drug Enforcement Administration ("DEA") regarding the illegal importation and distribution of narcotics by numerous individuals involved with the 14 Peabody Bloods Criminal Street Gang.  Members and affiliates of this gang distribute heroin and fentanyl in St. Louis City, near the Peabody Housing Projects, and in some areas of St. Louis County.  Both St. Louis City and St. Louis County are located within the Eastern District of Missouri.  Members and affiliates of this gang commonly arm themselves with illegally obtained firearms and commonly utilize violence to protect their narcotics and their proceeds from narcotics sales.  Members of the 14 Peabody Bloods use multiple cellular phone numbers to coordinate their narcotic transactions and commonly compartmentalize their narcotics trafficking utilizing one cellular phone for contact with buyers and one phone for contact with other distributors and/or suppliers.  Additionally, the members of this gang are known to keep a group of cellular phones,

3

all utilized for the purpose of selling illicit narcotics.   It is common for members of the group to pass the phones around amongst one another, so that one subject would have the "dope phones" one day, and a different individual would have them the next day.

### Information Obtained on Target Subject

On March 20, 2018, United States District Judge Catherine D. Perry, Eastern District of Missouri, signed an order authorizing the initial interception of wire and electronic communications over target telephones #6 and #7, and wire only communications over target telephone #8, being used by Demetrius JOHNSON.   Monitoring of the target telephones began on March 21, 2018.   Monitoring of target telephones #6, #7, and #8 ended at midnight on April 19, 2018.

On April 19, 2018, United States District Judge Audrey G. Fleissig signed an order authorizing the continued interception of wire and electronic communications to and from target telephone #7 and wire only communications over target telephone #8 and the initial interception of wire and electronic communications over target telephone #9.   All phones are used by Demetrius JOHNSON.   Continued interceptions over target telephones #7 and #8 and the initial interception over target telephone #9 began on April 20, 2018.   Monitoring of target telephones #7, #8, and #9 ended at midnight on May 18, 2018.

On May 8, 2018, United States District Judge John A. Ross signed an order authorizing the initial interception of wire and electronic communications over target telephone #10, used by Christopher PIPES.   Interception over target telephone #10 began on May 9, 2018 and ceased on June 7, 2018.   On June 18, 2018, United States District Judge Ronnie L. White signed an order authorizing the renewal of wire and electronic communications over target telephone #10, used by

4

PIPES. Interception over target telephone #10 began on June 19, 2018 and is scheduled to cease on July 18, 2018.

On June 18, 2018, United States District Judge Ronnie L. White signed an order authorizing the initial interception of wire and electronic communications over target telephone #11 and wire only communications over target telephone #12, used by Andre SMALLWOOD. Interceptions over target telephone #11 and #12 began on June 19, 2018 and is scheduled to cease on July 18, 2018.

The following sampling of summaries from pertinent, narcotic-related interceptions over Andre SMALLWOOD's target telephone #12 and the **subject cellular telephone** being used by an **unknown male**, demonstrate illicit wire and electronic communications with other subjects both known and unknown. Following the transcriptions of wire and electronic communications are the interpretations of the investigative team, based on their collective training, experience, and the best intelligence that has been gleaned up to the date of the respective interceptions.

The **target subject** was intercepted in the listed Title III investigation while utilizing the **subject cellular telephone** in what were deemed to be pertinent, narcotics-related wire and electronic communications. The communication indicated the user of the **subject cellular telephone**, is an unknown male (hereinafter "**UM**"), and believed to be a stash house operator and/or source of supply to Andre SMALLWOOD.

On June 25, 2018, a DEA Administrative Subpoena for cellular phone number (314) 359-8646 (the **subject cellular telephone**) was sent to Sprint, requesting subscriber information. On June 25, 2018, Sprint provided the subscriber information as Mike Larry, 1816 Carr Dr, Saint Louis, MO 63106. Investigators also learned via the subpoena response

5

that this cellular account was established on June 4, 2018 and is still active.

**Telephonic Intercepts**

Session #38 – on June 23, 2018, at approximately 12:56 p.m., the **UM**, utilizing the

**subject cellular telephone** placed an outgoing call to Andre SMALLWOOD, using target

telephone #12.

| | |
|---|---|
| **UM:** | What' up with it? [MUMBLES] Just got out. You know [U/I] get us there? |
| SMALLWOOD: | No, I was calling you about, I had heard... blood, that girl just died, huh? |
| **UM:** | Man, I just, I just heard that when woke up. Yeah. |
| SMALLWOOD: | [U/I] How she died? |
| **UM:** | I don't know, shit, to me she was drug free! |
| SMALLWOOD: | Oh. Man! Oh that's crazy. |

[VOICES OVERLAP]

| | |
|---|---|
| **UM:** | Shit's gonna happen. Man, she was drug free, man. |
| SMALLWOOD: | I just said, "Shit happens in threes (3s), man." |
| **UM:** | Huh? |
| SMALLWOOD: | Huh? I just said, that shit happens in threes (3s), man. That shit crazy? |
| **UM:** | That shit do happen, don't it? Man, everybody says that death come in threes (3s) don't it? |
| SMALLWOOD: | Man... that's crazy, man. |

[VOICES OVERLAP]

| | |
|---|---|
| **UM:** | Yeah. Yeah, um... probably, should we try probably, um, tomorrow; or later on, or something like that. |

| SMALLWOOD: | Oh, I ain't rush you, bruh. I don't care [U/I] |
| **UM:** | I know. |
| SMALLWOOD: | A'right. |
| **UM:** | A'right. |

During this phone call, your affiant believes that the **UM**, using the **subject cellular telephone**, called to tell SMALLWOOD about an unknown female that had died after believing the unknown female had been drug free.   SMALLWOOD then told the **UM** that "dead comes in 3's, man," which your affiant believes SMALLWOOD is talking about other deaths that have occurred recently due to overdosing on fentanyl in St. Louis, MO.   When the **UM** told SMALLWOOD that they will "try tomorrow, or later on, or something like that," your affiant believes the **UM** told SMALLWOOD that they would try to meet up the next day. SMALLWOOD affirms and advises that SMALLWOOD is not trying to rush the **UM**.

Session #50 – on June 24, 2018, at approximately 12:39 p.m., SMALLWOOD, using target telephone #12 placed an outgoing phone call to the **UM**, using the **subject cellular telephone**.

| **UM:** | Hello. |
| SMALLWOOD: | Yeah, what's up? Uh, you [U/I] |
| **UM:** | Hello. |
| SMALLWOOD: | What's up, bro? You know, I'm uh... You know I be with my kids today, so... You wanna wait till tomorrow or you what? What 'chu wanna do? |
| **UM:** | Yeah. We can wait till tomorrow. I just woke my ass up. |
| SMALLWOOD: | A'right. |
| **UM:** | Look, I got two (2) [U/I] two.. (2) both top. Up top teeth, man. |

SMALLWOOD:        A'ight man.

**UM:**                         A'ight.

SMALLWOOD:        Yeah. Get you some oragel, then.

[END OF CALL]

During the phone call, your affiant believes SMALLWOOD contacted the **UM**, using the

**subject cellular telephone**, to check the **UM**'s availability and both agreed to meet the next day.

Session #57 – on June 25, 2018, at approximately 3:55 p.m., SMALLWOOD, using target

telephone #12, placed an outgoing phone call to the **UM**, using the **subject cellular telephone**.

**UM:**                         Hello.

SMALLWOOD:        Hey, bro, what's up?

**UM:**                         What up with it?

SMALLWOOD:        Chill, chill.

**UM:**                         I'll probably go over there to get shit together.

SMALLWOOD:        Alright, call me when you're there.

**UM:**                         Huh?

SMALLWOOD:        Call me when you're ready.

**UM:**                         Okay.

During the phone call, your affiant believes SMALLWOOD contacted the **UM**, using the

**subject cellular telephone**, to touch base with the **UM** on when to meet, based on the

conversations listed above.   Additionally when the **UM** stated "I'll probably go over there to get

shit together," your affiant believes the **UM** was talking about getting the illegal drugs ready for

SMALLWOOD and SMALLWOOD advised the **UM** to call SMALLWOOD when the **UM** is

"ready" believed to mean when the **UM** has finished processing the illegal drugs.

Session #58 – on June 25, 2018, at approximately 4:54 p.m., the **UM**, using the **subject cellular telephone** placed an outgoing call to Andre SMALLWOOD, using target telephone #12.

| | |
|---|---|
| SMALLWOOD: | Yeah. |
| **UM**: | What up with it? Uh... |
| SMALLWOOD: | Shit. |
| **UM**: | Seven (7) of 'em. Everything every... Everything here. |
| SMALLWOOD: | Alright. |
| **UM**: | You hear me? |
| SMALLWOOD: | Yeah. |
| **UM**: | Alright. |

During this phone call, when the **UM** stated "seven of 'em. Everything every….Everything here," your affiant believes the **UM** advised SMALLWOOD that there was seven of an unknown amount of illegal drugs ready for SMALLWOOD.

Session #60 – on June 25, 2018, at approximately 5:46 p.m., SMALLWOOD, using target telephone #12, placed an outgoing phone call to the **UM**, using the **subject cellular telephone**.

| | |
|---|---|
| **UM**: | Hello. |
| SMALLWOOD: | Yeah, come on. |
| **UM**: | Alright. |

During this phone call, your affiant believes, SMALLWOOD called the **UM** to tell the **UM** that SMALLWOOD was ready to receive the unknown about of illegal drugs. Additionally, during this time, at approximately 5:48 p.m., agents received court authorized precision location

data over SMALLWOOD's target telephone #11, [1] that indicated SMALLWOOD was approximately 3035 meters from 4700-4998 Ray Avenue, St. Louis, MO 63116 (approximate location).   Agents attempted to establish surveillance on SMALLWOOD prior to and during the meeting with the unknown male, however, were unsuccessful due to the inaccuracy of the location data.

Based on your affiants training and experience, the intercepted communications listed above and the investigation to date, your affiant believes SMALLWOOD obtained an unknown amount of illegal drugs from the unknown male for distribution.   Your affiant has experience in coded conversations between drug distributors and in this specific instance, your affiant believes the **UM** is operating a stash house for SMALLWOOD and is a possible source of supply for SMALLWOOD.   Precision location data over the **subject cellular telephone** will assist agents greatly with the location of possible stash house(s) being operating by the drug trafficking organization and the identity of other co-conspirators distributing illegal drugs.

Your affiant believes, **the unknown male,** will continue to use the **subject cellular telephone** based on recent toll data and intercepted communications, in order to further his drug trafficking activities.

The investigation has clearly demonstrated that the **subject cellular telephone** is being used in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 841(a)(1) and 846 (the subject offenses). It is critical that the investigative team be able to locate and monitor the movements of the **subject cellular telephone**

---

1 On June 4, 2018, United States Magistrate Judge Patricia L. Cohen, Eastern District of Missouri, signed a precision location information warrant for Andre SMALLWOOD's target telephone #11. Case No. 4:18 MJ 6198 PLC.

thereby assisting in the identification of the co-conspirators and the seizure of narcotics. Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

<u>**Investigative Considerations and Techniques**</u>

Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

A.      Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

B.      Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.   For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact.   Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities.   Typically, wireless

11

providers maintain records of the cell tower information associated with the beginning and end of a call.

C.      Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

D.      Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.   A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.   The provider could have this information because each cellular device has one or more unique identifiers embedded inside it.   Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

E.      Wireless providers also maintain business records and subscriber information for particular accounts.   This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length

12

of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber.   In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed).   The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

F.     Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records.   This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data.   In the Eastern District of Missouri, such information is often referred to as "precision location information" or "PLI" data.   E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers.   Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the government.   The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Service Provider, any telecommunication

13

service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data.

None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only.    Furthermore, the criminal conduct being investigated is not limited to the daytime.    Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only. Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

## **Conclusion**

Based on the above information, there is probable cause to believe that the **subject cellular telephone** is being used to promote and facilitate a conspiracy to distribute narcotics and the requested authorization would provide relevant evidence of the conspiracy.    There is likewise probable cause to conclude that locating and monitoring the movements of the **subject cellular telephone** will lead to the relevant evidence concerning violations of Title 21, United States Code, Sections 841(a)(1) and 846.

7/2/2018
_____
DATE

_____
Daniel Hill
Task Force Officer
Drug Enforcement Administration


Sworn to and subscribed before me this ___2nd___ day of July, 2018.

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

15

# LIST OF TELECOMMUNICATION SERVICE PROVIDERS

### SPRINT
### and

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm | Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
| d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications | Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications | Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications |
| | Metro Teleconnect | | |

**ATTACHMENT 1, TO INCLUDE PROVIDERS OF ANY TYPE OF WIRE AND/OR ELECTRONIC COMMUNICATIONS**             Last Update: 06/21/2018